UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL
WELFARE, PENSION, AND ANNUITY
FUNDS, and THE TRUSTEES OF THE
LOCAL 1010 APPRENTICESHIP, SKILL
IMPROVEMENT, AND TRAINING
FUND,

                          Plaintiffs,

          -against-

COMMODORE CONSTRUCTION CORP.,

                         Defendant.

------------------------------------------------------------ X

**REPORT AND
RECOMMENDATION**
25-CV-2246 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      The Trustees of the Pavers and Road Builders District Counsel Welfare, Pension,

and Annuity Funds, and the Trustees of the Local 1010 Apprenticeship, Skill

Improvement, and Training Fund ("Plaintiffs" or "the Funds") initiated this action

against Commodore Construction Corp. ("Defendant" or "Commodore"), on April 23,

2025. Compl., ECF 1. Plaintiffs seek to recover delinquent employer benefit

contributions, union assessments, dues, and related relief, pursuant to the Employment

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Section 301 of

the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* ¶¶ 1, 26–36.

      Currently pending before the Court is Plaintiffs' motion for default judgment,

which the Honorable Diane Gujarati referred to the undersigned Magistrate Judge for a

report and recommendation. *See* Clerk's Entry of Default, ECF 10; Pls.' Mot. for Default

J. ("Mot. for Default J."), ECF 13; Aug. 20, 2025 ECF Order Referring Mot. For the

reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

## BACKGROUND

### I.  Factual Background

Plaintiffs are employer and employee trustees of multi-employer labor management trust funds organized under the LMRA and ERISA. Compl., ECF 1, ¶ 4. The Funds are administered in Whitestone, New York, within the Eastern District of New York. *Id.* Plaintiffs allege that Defendant "was an employer within the meaning of [S]ection 3(5) of ERISA, 29 U.S.C. § 1002(5)" and "was an employer in an industry affecting commerce within the meaning of [S]ection 501 of the LMRA, 29 U.S.C. § 142." *Id.* ¶ 5.

The Defendant was a party to a collective bargaining agreement ("CBA"), with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union"). *Id.* ¶ 10. Under the CBA, Defendant agreed to make specified benefit contributions to the Funds and related entities "in connection with all work performed within the trade and geographical jurisdiction of the Union ('Covered Work')." *Id.* ¶ 14. In addition, under the CBA, Defendant was required to "forward specified dues check-offs and other contributions to the Union ('union assessments') for each hour of Covered Work performed" by its employees. *Id.* ¶ 15. Contributions were required to be remitted to the Funds on or before the 35th day after the close of the month in which the hours were worked, in an amount determined by "multiplying specified hourly contribution rates by the number of hours of Covered Work performed in the respective reporting period." *Id.* ¶ 16.

Additionally, Defendant agreed to abide by the terms and conditions of all the agreements and declarations of trust "with respect to the Welfare Fund, Pension Fund,

Training Fund and Annuity Fund," which agreements were incorporated into the CBA. *Id.* ¶ 11 (quotation marks omitted). Under these agreements, Defendant was subject to a "Collection Policy," *id.* ¶ 13, which provided as follows:

> Where an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees that performed work and the hours worked, the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. . . . The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit, and no other proof need by [*sic*] provided by the Trustees to any court . . . to compute the total payments due from the employer for all delinquent months, exclusive of liquidated damages, interest, attorneys' fees and costs . . . . This provision does not, however, limit the Trustees from seeking a greater amount than the projected delinquency if a greater amount is shown to be owed by records or other evidence.

Collection Policy, ECF 15-4, art. IV, ¶ 9; *see* Compl., ECF 1, ¶ 18.

Moreover, if an employer failed to pay contributions when they were due, the CBA and Collection Policy provide that the employer is liable to the Funds for interest on any unpaid contributions, in the amount of 10% per year, in addition to liquidated damages in the amount of 10% on any contributions that are due. Compl., ECF 1, ¶¶ 19, 21. An employer is also required, under the CBA and Collection Policy, to pay the Funds' attorneys fees in the event that the Funds engage an attorney to recover delinquent benefit contributions. *Id.* ¶¶ 20–21.

In the complaint, Plaintiffs allege that Defendant failed to submit reports detailing all the Covered Work of its employees for certain time periods from September 2024 through February 2025. *Id.* ¶ 24. In addition, the Funds allege that Defendant submitted the contributions for the period of August 2024 after their due date, resulting in late payment interest of $782.91. *Id.* ¶ 25.

3

Plaintiffs bring two claims, one for unpaid contributions under 29 U.S.C. § 1145, for the time period from September 2024 through February 2025, *id.* ¶¶ 27–31, and a claim alleging a violation of the CBA under 29 U.S.C. § 185. *Id.* ¶¶ 32–37. As to the second claim, Plaintiffs allege that Defendant violated the CBA by failing to timely remit reports, contributions, union assessments, and dues check-offs for the same time period, and for paying the August 2024 contributions late. *Id.* ¶¶ 34–35. Accordingly, Plaintiffs allege that Defendant is liable to the Funds for (1) contributions and union assessments for the time period from September 2024 through February 2025; (2) interest on any unpaid contributions at the rate of 10% per year; (3) 10% in liquidated damages of the principal amount of the delinquency; (4) late payment interest of $782.91 for the late payment related to August 2024; (5) all reasonable attorney's fees and costs incurred by Plaintiffs; and (6) other such legal or equitable relief deemed appropriate by the Court. *Id.* ¶¶ 26, 31, 36; *id.* at 8–9 (wherefore clause).

## II. Procedural History

As noted, Plaintiffs filed the complaint on April 23, 2025. *See generally id.* The Clerk of Court issued summons and Plaintiffs filed proof of service on April 28, 2025, establishing that Plaintiffs effected service on Defendant via the New York Secretary of State. *See* Summons Issued, ECF 2; Aff. of Service, ECF 6 (representing service to the Secretary of State on April 25, 2025). On May 20, 2025, Plaintiffs requested a certificate of default after Defendant failed to respond to the complaint. *See* Req. for Certificate of Default, ECF 8. The Clerk of Court issued a certificate of default on May 22, 2025. *See* Clerk's Entry of Default, ECF 10.

After approximately one month without activity in the case, the undersigned Magistrate Judge directed Plaintiffs to initiate default motion practice or file a status report by July 25, 2025. *See* June 27, 2025 ECF Order. That same day, Plaintiffs filed a

4

status report indicating that they had not initiated a default motion because they were actively engaged in settlement discussions with Defendant. *See* Status Report, ECF 11. In response, the Court extended Plaintiffs' deadline to initiate default motion practice to August 29, 2025, in the event the case was not resolved. *See* June 27, 2025 ECF Order. On August 19, 2025, Plaintiffs filed the pending motion for default judgment, supported by declarations, numerous exhibits, and a memorandum in support ("Mem."). *See* ECF 13–18. Judge Gujarati then referred the matter to the undersigned Magistrate Judge for a report and recommendation. *See* Aug. 20, 2025 ECF Order Referring Mot.

On September 29, 2025, the Court scheduled a default motion hearing for October 22, 2025. *See* Sept. 29, 2025 ECF Scheduling Order; Default Notice, ECF 20. The Court also directed the Clerk of Court to mail copies of its scheduling order, along with a written notice scheduling the default motion hearing, to Defendant at its last known business address with the New York Secretary of State as well as other addresses deemed related to Defendant. *See* Sept. 29, 2025 ECF Scheduling Order; Default Notice, ECF 20. The Court held the default motion hearing on October 22, 2025. *See* Oct. 22, 2025 ECF Min. Entry & Order. Defendant did not appear, and the Court took Plaintiffs' motion under advisement. *Id.* At the hearing, the Court directed Plaintiffs to file a supplemental letter addressing how they determined Defendant's addresses for purposes of mailing the default paperwork as required by the E.D.N.Y. local rules and any additional documentary support or authority as to Plaintiffs' request for costs. Oct. 22, 2025 ECF Min. Entry & Order. On October 23, 2025, Plaintiffs submitted their supplemental letter with exhibits in support. *See* Pls.' Letter, ECF 21.

**DISCUSSION**

Plaintiffs now move for default judgment on both claims. For the reasons set forth below, Plaintiffs motion should be granted.

## I. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(a)–(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[1] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

---

[1] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. First, Plaintiffs requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was mailed and emailed to the last known address for Defendant. *See* Req. for Certificate of Default, ECF 8; Certificate of Service, ECF 9 (certifying mailing of Request for Certificate of Default). Second, Plaintiffs have demonstrated that Defendant has failed to defend the action and that the pleadings were properly served. Grancio Default Decl., ECF 8-1 (stating that the Defendant is a corporation and is not a minor, incompetent, or engaged in active military service); *see also* Aff. of Service, ECF 6 (establishing service on corporate Defendant by service on the New York Secretary of State). Third, Plaintiffs have certified the mailing of all of the default motion papers to Defendant's last known business address, in accordance with Local Rule 55.2(a)(3). *See* Certificate of Service, ECF 19.

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "[p]laintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Trac Constr. Grp., Inc.*, No. 22-CV-1935 (ENV) (RER), 2022 WL 7810540, at *4 (E.D.N.Y. Oct. 4, 2022) ("In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely solely on the affidavits, reports, and other documentary evidence submitted by [the] plaintiffs." (quotation marks omitted)),

*report and recommendation adopted*, Dec. 21, 2022 ECF Order Adopting R. & R. In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II. Analysis

### A. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of a default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.* ("*Duce Constr. Corp.*"), No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

#### 1. *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly

served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *Antoine*, 489 F. Supp. 3d at 81.

Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. The Court notes that Plaintiffs adequately served Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. *See* Aff. of Service, ECF 6; N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1) & (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Defendant failed to respond within 21 days of service. *See* Aff. of Service, ECF 6; Grancio Decl., ECF 17, ¶ 7. Defendant likewise failed to respond after Plaintiffs moved for default judgment and after Defendant was sent notice of the motion both from Plaintiffs and the Clerk of Court. *See* Certificate of Service, ECF 19 (certifying service of Plaintiffs' motion for default judgment, memorandum of law, and supporting declarations and exhibits, by first class mail and electronic mail to Defendant); Sept. 29, 2025 ECF Scheduling Order; Notice to Defendant, ECF 20; *see also* Oct. 22, 2025 ECF Min. Entry & Order (indicating that there was no appearance on Defendant's behalf at the default motion hearing). In light of Defendant's failure to respond, notwithstanding the provision of notice at least three times regarding this proceeding, the Court weighs this factor in favor of default.

2. *Meritorious Defense*

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems.*

*& Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendant has entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

3. *Prejudice*

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiffs where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendant's failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendant[]." *Duce Constr. Corp.*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

**B. Liability**

Plaintiffs have also adequately alleged Defendant's liability in this matter. Specifically, Plaintiffs allege that Defendant (1) violated its obligations under the CBA and ERISA by failing to make required contributions to the Funds, *see* Compl., ECF 1, ¶¶ 28–31 (first claim), and (2) violated the CBA by failing to timely remit reports, contributions, union assessments, and dues check-offs to the Funds, *see* Compl., ECF 1, ¶¶ 33–36 (second claim). The Court addresses these claims in turn.

1.  *ERISA Violations*[2]

Plaintiffs allege that Defendant, an employer bound by the CBA, violated ERISA

by failing to make required contributions to the Funds. Under Section 515 of ERISA,

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in

favor of a "fiduciary for or on behalf of a plan" seeking to enforce Section 515, "the

court shall award the plan . . . the unpaid contributions," as well as "interest on the

unpaid contributions [and] liquidated damages" according to the "rate provided under

the plan"). Relatedly, Section 301 of the LMRA provides a federal cause of action for

"violation[s] of contracts between an employer and a labor organization representing

employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Where an

employer fails to make required contributions, plan fiduciaries can bring a civil action

to enforce the terms of the CBA. *See* 29 U.S.C. § 1132(a)(3).

In this case, Plaintiffs allege in the complaint that Defendant is an employer as

defined by ERISA. Compl., ECF 1, ¶ 5. Plaintiffs further allege that the Funds are multi-

employer employee benefit plans governed by ERISA to which Defendant was

---

[2] The Court notes that Plaintiffs' claims are timely. "In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified 'in the most nearly analogous state limitations statute,'" *i.e.*, New York's six-year statute of limitations for contract actions. *Landry v. Metro. Life Ins. Co.*, No. 19-CV-3385 (KPF), 2021 WL 848455, at *7 (S.D.N.Y. Mar. 5, 2021) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (citing N.Y. C.P.L.R. § 213)). The same statute of limitations applies to ordinary LMRA claims. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167–68 (2d Cir. 1984); *see also Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 338–41 (E.D.N.Y. 2009). Plaintiffs' claims fall well within the applicable six-year period.

obligated to contribute under the CBA.[3] *See* Compl., ECF 1, ¶¶ 1, 4, 10. This action was brought by fiduciaries of the Funds, *i.e.*, their trustees, as provided for under 29 U.S.C. § 1132(a)(3). *See id.* ¶ 4. Moreover, Plaintiffs have alleged that Defendant failed to submit contributions or reports to the Funds detailing the number of hours of Covered Work performed by Defendant's employees during certain periods from September 2024 through February 2025. *See id.* ¶¶ 24, 30. In the absence of timely reports detailing the Covered Work, Plaintiffs seek to collect contributions in accordance with the terms of the Collection Policy. *See id.* ¶ 30. In light of Plaintiffs' well pleaded allegations that establish their entitlement to relief, the Court recommends finding Defendant liable as to this ERISA claim and awarding damages, including unpaid contributions, interest, liquidated damages, and attorney's fees and costs, as detailed below.

2.  *Breach of the CBA*

As set forth above, Plaintiffs also allege that Defendant breached the CBA by failing to timely file remittance reports, contributions, union assessments, and dues check-offs to the Funds. More specifically, Plaintiffs assert that Defendant failed in these requirements under the CBA for the time period from September 2024 through February 2025, and that Defendant's contributions for the August 2024 period were late,

---

[3] "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(5)). "The term 'multiemployer plan' means a plan — (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." 29 U.S.C. § 1002(37)(A).

warranting an award of late payment interest of $782.91 for that month. Compl., ECF 1, ¶¶ 33–36.

The LMRA authorizes suits in federal court "for violation[s] of contracts between an employer and a labor organization[4] representing employees." 29 U.S.C. § 185(a); *see also Annuity, Pension, Welfare, Training and Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB) (RML), 2023 WL 7413837, at *2 (E.D.N.Y. Sept. 28, 2023), *report and recommendation adopted*, 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." 29 U.S.C. § 185(b).

Plaintiffs have adequately alleged entitlement to relief under the LMRA. Per the allegations in the complaint, the Union is a qualifying labor organization, the CBA is a contract between the Union and Defendant (an employer), and Defendant was bound by the CBA at all relevant times. Compl., ECF 1, ¶¶ 1, 10; *see* Loscalzo Decl., ECF 14, ¶¶ 5–16 (representing that Defendant has been a member of the Building Contractors Association ("BCA") since August 16, 2018, and accordingly was bound to the various collective bargaining agreements in place between the BCA and the Union, including a successor agreement covering the time period from July 1, 2022 through June 30, 2025); *see also generally* CBA, ECF 14-4. As alleged in the complaint, under the CBA, Defendant was required to pay specified contributions to the Funds and to timely submit remittance reports, as well as payments for contributions to the Funds, union

_____

[4] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

assessments, and dues check-offs. Loscalzo Decl., ECF 14, ¶¶ 18–21 (citing CBA, ECF 14-4, art. IX, §§ 1, 5). Given the unrebutted allegations in the complaint that Defendant failed to timely submit all of the required remittance reports, contributions, dues, and other payments due under the CBA, the Court finds that Plaintiffs have sufficiently established Defendant's liability for breaching the CBA.

## III. Damages

Having found that Defendant's default constitutes an admission of liability with respect to both of Plaintiffs' claims and that entry of default is warranted, the Court now determines the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "'is not considered an admission of damages'" (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v. Colony Elec. Co., Inc.* ("*Colony Elec. Co.*"), No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). Section 502, which was codified at 29 U.S.C. § 1132(g)(2), provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —

14

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of —

    (i)    interest on the unpaid contributions, or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Colony Elec. Co.*, 2010 WL 5665042, at *4. Here, Plaintiffs assert that they are entitled to delinquent ERISA contributions and non-ERISA contributions, prejudgment interest, liquidated damages, and post-judgment interest at the statutory rate. Mem., ECF 18, at 15–16. Plaintiffs also request attorney's fees, costs, and auditor's fees. Specifically, Plaintiffs assert that they are entitled to the following damages: $21,460.20 in delinquent ERISA contributions for shortfalls in the contributions made in September and October 2024, and for the contributions due for February 2025; $999.60 in union assessments for February 2025; $550.80 in dues check-offs for February 2025; $782.91 in late payment interest for August 2024; at least $4,967.79 in interest related to the payments due from September 2024 through January 2025, and for February 2025; and liquidated damages in the amount of $11,059.78. Statement of Damages, ECF 17-9; *see also* Proposed Judgment, ECF 17-8; Mem., ECF 18, at 15–16. The Court recommends awarding damages as follows.

### A. Delinquent ERISA and Non-ERISA Contributions

The CBA requires Defendant to make specified contributions to the Funds for all Covered Work performed "within the jurisdictional territory of the Union." *See* Loscalzo Decl., ECF 14, ¶ 18; CBA, ECF 14-4, art. IX, § 1, at ECF pp. 25–26. These contributions are due no later than 35 days after the close of a month when the Covered Work was performed, and the CBA also requires employers to submit reports detailing the number of hours worked, which are also due 35 days after the month in which the work was performed. CBA, ECF 14-4, art. IX, § 1, at ECF p. 26. The CBA also requires employers "to deduct $1.35 per hour as Union dues from the gross wages of each Employee" covered by the CBA who authorizes such deduction in writing. *Id.*, art. IX, § 5, at ECF p. 27. All benefit fund and other contributions are required to be submitted using a "one-check" system, and dues check-offs payments must be submitted together with each employer's benefit fund contributions. Loscalzo Decl., ECF 14, ¶¶ 22–23 (citing CBA, ECF 14-4, art. IX, §§ 1, 5).

In the event of non-payment of required contributions, the CBA provides that the employer is liable for the delinquent contributions, interest on unpaid contributions at an annual rate of 10%, liquidated damages in the amount of 10%, attorney's fees and costs, and, among other possible costs, auditing costs. Loscalzo Decl., ECF 14, ¶ 27; *see* CBA, ECF 14-4, art. IX, § 6, at ECF p. 27; Collection Policy, ECF 15-4, art. II, § 5, at ECF p. 3. Pursuant to the trust agreement, the trustees of the Funds have adopted a Collection Policy, as alleged in the complaint and set forth above. Montelle Decl., ECF 15, ¶ 7; *see generally* Collection Policy, ECF 15-4. Under the Collection Policy, contributions are delinquent one calendar day after the due date. Collection Policy, ECF 15-4, art. II, § 2, at ECF p. 3.

Plaintiffs have submitted an affidavit from the administrator of the Funds, Joseph Montelle, which details Defendant's delinquencies. Montelle Decl., ECF 15. As detailed by the Funds administrator, at the time this case was initiated, Defendant had "failed to report the number of hours of Covered Work performed by each of its employees for the period of September 2024 through February 2025." Montelle Decl., ECF 15, ¶ 11. After the lawsuit was initiated, however, Defendant remitted $89,137.55 in contributions for the time period from September 2024 through January 2025. *Id.* ¶ 12. The Funds' third-party administrator determined, however, that Defendant underpaid as to their required contributions for September 2024 and October 2024, in the amounts of $232.48 and $178.72, respectively, because their calculations were made using old benefit rates that were inapplicable to those months.[5] *Id.* ¶ 13 (citing Morris Decl., ECF 16, ¶¶ 9–10); *see also* Discrepancy Report, ECF 16-1 (detailing delinquency for September and October 2024 based on calculations using incorrect rates); September and October 2024 Remittance Reports and Payments, ECF 15-5, at ECF pp. 13, 16 (calculating fringe benefits for hours worked in fall 2024 using out-of-date rates). Having carefully reviewed the declarations filed in support of Plaintiffs' motion, together with the underlying exhibits submitted in support, and having independently calculated the underpayment based on the remittance reports submitted, the Court

---

[5] Rates sheets submitted as exhibits to the Montelle Declaration specify the rates due during the relevant time period. *Compare* Local 1010 Rates Sheet, ECF 15-7 (detailing hourly and fringe benefits rates for July 1, 2024 through June 30, 2025; specifying $53.85 in hourly fringe benefits, and required withholdings in the amounts of $1.35 per hour for dues check-offs and $0.10 per hour for the New York State Political Action Committee) *with* Local 1010 Rates Sheet, ECF 15-6 (detailing hourly and fringe benefits rates for July 1, 2023 through June 30, 2024; specifying $52.17 in hourly fringe benefits, and required withholdings in the amounts of $1.35 per hour for dues check-offs and $0.10 per hour for the New York State Political Action Committee).

17

finds that Plaintiffs have established Defendant's underpayment in the amount of $411.20 for required contributions to the Funds in September and October 2024. Morris Decl., ECF 16, ¶¶ 9–10.[6]

Plaintiffs also assert that Defendant owes unpaid contributions for February 2025, based on the submission of remittance reports with no corresponding payments. Montelle Decl., ECF 15, ¶¶ 15–16. As to that month, the remittance reports document 408 hours of work, with corresponding contributions to the Funds due in the amount of $21,049.00, union assessments of $999.60, and dues check-offs of $550.80.[7] *Id.* ¶ 16; *see* February 2025 Remittance Reports, ECF 15-8. Having independently calculated the amounts due from Defendant on the basis of the February remittance reports, the Court finds that Plaintiffs' totals as to the February 2025 delinquencies are accurate.

Based on the affidavits and exhibits submitted in support of Plaintiffs' motion, the Court finds that Plaintiffs should be awarded damages of (1) **$21,460.20** in unpaid contributions to the Funds ($411.20 + $21,049.00 = $21,460.20); (2) **$999.60** in union assessments; and (3) **$550.80** in dues check-offs.

---

[6] The Court notes that this underpayment only pertained to ERISA fund contributions due for the Welfare Fund, IRB (Income Replacement Benefit), Pension Fund, and Annuity Fund, because the rates for the other fringe benefits and the dues check-offs did not change. *See* Local 1010 Rates Sheet, ECF 15-7 (detailing hourly and fringe benefits rates for July 1, 2024 through June 30, 2025); Local 1010 Rates Sheet, ECF 15-6 (detailing hourly and fringe benefits rates for July 1, 2023 through June 30, 2024). Accordingly, all of the $411.20 underpayment for this period is due to the Funds, and no union assessments or dues check-offs are due for this period.

[7] The Funds Administrator's declaration explains that the contributions to the Funds include amounts due to the Welfare Fund, IRB (Income Replacement Benefit), Pension Fund, and Annuity Fund, with union assessments comprising amounts due to the Local 1010 Training Fund, Local 1010 LECET Fund, IAP, NYS LECET, NYS Laborers, and NYS Political Action Committee, and the dues check-offs amount being the sum due to Laborers Local Union 1010. Montelle Decl., ECF 15, ¶ 16 & nn.1–3; *see also* February 2025 Remittance Reports, ECF 15-8.

**B. Pre-Judgment Interest on Unpaid and Late-Paid Contributions**

ERISA states that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if any. 29 U.S.C. § 1132(g)(2). In this case, the Collection Policy authorizes Plaintiffs to collect interest on delinquent contributions "at the rate of ten percent (10%) per annum." Montelle Decl., ECF 15, ¶ 17. Here, Plaintiffs seek interest based on late payments for August 2024, as well as interest related to payments made for September 2024 through January 2025, which were late and, for certain weeks, incomplete. *Id.* ¶¶ 18, 19. For each of these late payments, the applicable interest is calculated from the date the contribution was due through the date of payment; as noted *supra*, contributions are considered delinquent one day after they are due. *Id.* ¶¶ 9, 18–19.

In addition, with respect to the interest due on the underpayment amounts for September and October 2024 and the unpaid contributions for February 2025, Plaintiffs posit that the interest should also be calculated at the rate of 10% from the date each contribution was due. *Id.* ¶¶ 20–21. Specifically, Plaintiffs have used the following formula to calculate prejudgment interest owed with respect to the unpaid and late-paid contributions, from accrual date to the date of payment:

[(amount owed in contributions) x (applicable interest rate of 10%) / 365 (days per year)] x (number of days late)

Morris Decl., ECF 16, ¶ 17. Using that formula, Plaintiffs request $782.91 in late payment interest for the August 2024 contributions and $4,264.77 in interest for the late payments for September 2024 through January 2025. Morris Decl., ECF 16, ¶¶ 18–20; *see also* Interest Calculations, ECF 16-2 (detailing $5,047.68 in interest owed for late payments, comprising $782.91 in interest for August 2024 contributions, and the remainder ($4,264.77) for September and October 2024). These amounts are supported

by the records and Plaintiffs' calculations; accordingly, a total of **$5,047.68** should be awarded as interest on the late-paid contributions.

In addition to the interest amounts due for late payments, Plaintiffs request interest on the unpaid contribution amounts for September and October 2024, and the unpaid contributions for February 2025. Plaintiffs have provided a detailed spreadsheet setting forth the Funds' calculations of interest and liquidated damages for these periods. Montelle Decl., ECF 15, ¶¶ 18–20 (citing Summary of Damages, ECF 15-9, at ECF pp. 1, 4). The Court recommends an award of interest on any unpaid contributions, from the date the contributions became due through the date of judgment, using the same methodology discussed above. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs., Local 15, 15A, 15C & 15D ex rel. Callahan v. Carlo Lizza & Sons Paving, Inc.*, No. 19-CV-2461 (BMC) (LB), 2019 WL 5694053, at *5 (E.D.N.Y. Aug. 22, 2019) (using same methodology to calculate interest), *report and recommendation adopted*, Sept. 30, 2019 ECF Order Adopting R. & R.; *Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D ex rel. Callahan v. Barbella Env't Tech., Inc.*, No. 17-CV-4397 (CBA) (RLM), 2018 WL 4403393, at *5 (E.D.N.Y. Mar. 1, 2018) (same). The Court has calculated the interest due, through the date of this Report and Recommendation ("R&R"), for the periods in which Defendant underpaid or did not pay the required contributions, as follows:

| Contribution Period Ending Date | Month End | Delinquency Date (35 days after Month End) | Days Elapsed (between Delinquency Date and 12/22/2025) | Unpaid Contribution Amount | Daily Interest Rate | Accrued Interest Due (Daily Interest Rate x Days Elapsed) |
|---|---|---|---|---|---|---|
| 9/24/2024 | 9/30/2024 | 11/4/2024 | 413 | $232.48 | 0.063 | $26.02 |
| 10/1/2024 | 10/31/2024 | 12/5/2024 | 382 | $178.72 | 0.048 | $18.34 |
| 2/4/2025 | 2/28/2025 | 4/4/2025 | 262 | $2,472.00 | 0.677 | $177.37 |
| 2/11/2025 | 2/28/2025 | 4/4/2025 | 262 | $3,708.00 | 1.015 | $265.93 |
| 2/18/2025 | 2/28/2025 | 4/4/2025 | 262 | $2,884.00 | 0.79 | $206.98 |
| 2/25/2025 | 2/28/2025 | 4/4/2025 | 262 | $5,852.19 | 1.603 | $419.99 |
| 3/4/2025 | 3/31/2025 | 5/5/2025 | 231 | $6,132.81 | 1.68 | $388.08 |
| Totals | | | | $21,460.20 | 5.876 | $1,502.71 |

*See* Summary of Damages, ECF 15-9, at 3–4 (providing underlying data for interest on short payments for September and October 2024, and contributions due for February 2025).

Based on the foregoing analysis, as of the date of this R&R, December 22, 2025, the total interest for unpaid and late-paid ERISA contributions is **$6,550.39** ($5,047.68 + $1,502.71 = $6,550.39). Plaintiffs are also entitled to interest calculated from the date of this R&R through the date that the Clerk of Court enters final judgment at a per diem rate of **$5.88**.[8]

---

[8] The daily prejudgment interest rate for delinquent contributions is determined by dividing the applicable interest rate by 365 and multiplying that rate by the unpaid contribution amounts for a given period of delinquency, which are detailed in the above chart. The daily rates for each delinquency are then totaled to determine the overall daily rate. *See, e.g., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV) (TAM), 2023 WL 7390362, at *7 n.10 (E.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023) (calculating daily rate).

### C. Liquidated Damages

Plaintiffs also request "liquidated damages at rates prescribed by the documents and instruments governing the plan." Mem., ECF 18, at 8; *see also* Summary of Damages, ECF 15-9, at ECF p. 1 (detailing $11,059.78 in liquidated damages). As set forth above, the trust documents entitle Plaintiffs to liquidated damages equal to 10% of the delinquent ERISA contributions. Here, Plaintiffs request liquidated damages on all of Defendant's unpaid ERISA contributions as well as those ERISA contributions that were paid late. Mem., ECF 18, at 8–9, 9 n.7. As the Second Circuit has observed, § 1145 of ERISA requires employers to make plan contributions in accordance with the terms of the plan or applicable CBA, so even when ERISA contributions are paid late, in the event of a "judgment in favor of the plan" under § 1132(g)(2) of ERISA, "the plaintiff is entitled to all the measures of relief not already obtained." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995); *see also id.* at 1506 (observing that other circuits have "held or indicated that an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions"). Accordingly, Plaintiffs here are entitled to 10% interest on all contribution payments that were late or that remain unpaid.

Plaintiffs have provided substantial documentation concerning the late payments for which they request liquidated damages. *See* Montelle Decl., ECF 15, ¶ 25; *see also* Summary Damages Chart, ECF 15-9; Late Payment Interest Report, ECF 16-2 (detailing receipt date of payments); September and October 2024 Remittance Reports and Payments, ECF 15-5 (detailing late payments); February 2025 Remittance Reports, ECF 15-8 (detailing hours for unpaid payments in February 2025); *see generally* Morris Decl.,

ECF 16. Plaintiffs request $11,059.78 in liquidated damages based on the $89,137.55 in ERISA contributions Defendant paid following the initiation of this lawsuit, plus the $21,460.20 in unpaid contributions, which total $110,597.75. *See* Summary Damages Chart, ECF 15-9, at ECF pp. 1–2. This amount is amply supported by the record and correctly calculated as 10% of the total amount of the late or unpaid contributions. Accordingly, **$11,059.78** in liquidated damages should be awarded under the terms of the CBA and ERISA.[9]

### D. Other Relief

1. *Attorney's Fees*

Although ERISA mandates the recovery of attorney's fees in any successful action to recover delinquent contributions, courts have broad discretion in determining what constitutes a reasonable attorney's fee. *See* 29 U.S.C. § 1132(g)(2)(D); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). In this circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's

---

[9] The relevant statutory provision as to liquidated damages states that "the court shall award . . . an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid ERISA contributions. 29 U.S.C. § 1132(g)(2). Therefore, notwithstanding Plaintiffs' entitlement to liquidated damages under the trust documents, ERISA contemplates "a mandatory award of . . . liquidated damages in an amount at least equal to" prejudgment interest. *The Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Loc. 14-14B v. Superior Site Work, Inc.*, No. 15-CV-543 (MKB), 2017 WL 639248, at *5 (E.D.N.Y. Feb. 16, 2017) (quotation marks omitted); *see also Durso v. Almonte Beach Food Corp.*, No. 17-CV-6673 (SJF) (ARL), 2021 WL 493398, at *6–7 (E.D.N.Y. Feb. 10, 2021); *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-CV-9581 (SN), 2017 WL 2169302, at *1–2 (S.D.N.Y. May 17, 2017). Here, because the amount of liquidated damages provided for under the trust documents exceeds the recommended award of prejudgment interest for unpaid ERISA contributions, the Court recommends an award of liquidated damages as provided for under the trust documents: $11,059.78, plus an award equivalent to the per diem prejudgment interest calculated by the Clerk of Court at a rate of $5.88 from the date of this R&R through the entry of final judgment.

23

customary hourly rate, awards given in similar cases, and the "experience, reputation, and ability" of the attorney. *Arbor Hill*, 522 F.3d at 186 n.3, 190. Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a presumptively reasonable fee." (quotation marks omitted)). With very limited exceptions, "[a]ll applications for attorney's fees" in this Circuit "should normally be disallowed unless accompanied by contemporaneous time records." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quotation marks omitted); *see also Finkel*, 970 F. Supp. 2d at 127.

In this case, Plaintiffs seek $6,150.60 in attorney's fees for 20.1 hours, billed at a rate of $333 per hour for partners and associates, and at a rate of $132 per hour for legal assistants. *See* Billing Records, ECF 17-6; Mem., ECF 18, at 12–14. Based on contemporaneous records, this case has been worked on by one partner, two associates, two paralegals, and one former senior paralegal. *See* Grancio Decl., ECF 17, ¶¶ 18–20, 22–24. "In ERISA cases, attorney's fees have been awarded in the Eastern District of New York at an hourly rate of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates, and up to $90.00 for non-attorney support staff." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-561 (CBA) (JAM), 2025 WL 447731, at *17

24

(E.D.N.Y. Jan. 15, 2025) (quotation marks omitted), *report and recommendation adopted sub nom. Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. INKA Constr. LLC*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025); *see also Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232–33 (2d Cir. 2006) (noting that fee awards must take into account "the current market rate" in the district). *But see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242–43 (E.D.N.Y. 2025) (observing that attorney's fees may be adjusted for inflation).

Here, Plaintiffs' counsel, attorneys and legal assistants at Virginia & Ambinder, LLP, have expertise in ERISA and complex commercial litigation; they request $333 per hour for partners and attorneys, and $132 per hour for legal assistants. *See* Grancio Decl., ECF 17, ¶¶ 18–25; *Finkel v. KS&SS Assocs., Inc.*, No. 23-CV-2484 (HG) (TAM), 2024 WL 5399232, at *7–8 (E.D.N.Y. Jan. 29, 2024) (finding a billing rate of $410 per hour for partners, $310 per hour for more junior attorneys (described as "law clerks"), and $155 per hour for legal assistants reasonable for the same firm in an ERISA matter), *report and recommendation adopted*, Feb. 14, 2024 ECF Order Adopting R. & R. Counsel further represents that Virginia & Ambinder, LLP "utilizes a blended billing rate" for Plaintiffs, "meaning that work performed by both partners and associates is billed at the same uniform hourly rate" and that "[t]his rate was freely negotiated between the parties." Grancio Decl., ECF 17, ¶ 21. Plaintiffs' counsel employs a blended billing rate for legal assistants as well. *Id.* ¶ 25. The Court finds that Plaintiffs' counsel's requested hourly rates of $333 for partners and associates and $132 for legal assistants are reasonable. The number of hours billed, 20.1, based on the billing records and scope of work performed by counsel, is also reasonable. Billing Records, ECF 17-6; Mem., ECF 18, at 12–14; Grancio Decl., ECF 17, ¶¶ 17–27; *see also Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ges Bake Shop, Inc.* ("*Ges Bake Shop*"), No. 13-CV-0728 (FB) (CLP), 2014

WL 1159821, at *10 (E.D.N.Y. Mar. 21, 2014) (finding 31.2 hours of work reasonable in an ERISA default case). Accordingly, the Court recommends an award of **$6,150.60** in attorney's fees.

2. *Costs*

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *5 (E.D.N.Y. May 27, 2020) (citing *Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017), *report and recommendation adopted*, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020)). Plaintiffs request $505.96 in costs related to this action, comprising a $405.00 filing fee, $79.50 for service of process, $6.51 in postage fees, and $14.95 in online research fees. *See* Billing Records, ECF 17-6, at ECF pp. 6–7; Fee Records, ECF 17-7, at ECF pp. 1–2 (detailing fee for service of process), 3–5 (detailing postage fees), 6–11 (detailing research fees); *see also* Pls.' Letter, ECF 21 (providing further support for request for costs). The Court may take judicial notice of the $405.00 filing fee. The Court finds the service of process costs and the other administrative expenses to be documented and reasonable and, consequently, recommends awarding **$505.96** in costs. *See Ges Bake Shop*, 2014 WL 1159821, at *10 (awarding fees for filing, service, postage, and research).

**E. Post-Judgment Interest**

The Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a

26

rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'" *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (alteration in original) (quoting 28 U.S.C. § 1961(b)), *report and recommendation adopted sub nom. Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). Accordingly, the Court respectfully recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961 on all sums awarded from the date judgment is entered to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for a default judgment be granted. Judgment should be entered against Defendant, awarding Plaintiffs **$47,277.33** in damages, based on the following:

(1) delinquent contributions comprising **$21,460.20** in unpaid contributions to the Funds, **$999.60** in unpaid union assessments, and **$550.80** in unpaid dues check-offs;

(2) liquidated damages in the amount of **$11,059.78** based on Defendant's delinquent payment of ERISA contributions;

(3) pre-judgment interest for unpaid and late-paid ERISA contributions in the amount of **$6,550.39**, representing the interest due on unpaid contributions from the date of accrual until paid, and, for the $21,460.20 in contributions that remain unpaid, interest accrued through December 22, 2025, the date of this Report & Recommendation;

(4) an additional amount of pre-judgment interest calculated from December 22, 2025, through the date that the Clerk of Court enters final judgment at a per diem rate of **$5.88**;

(5) post-judgment interest at the rate set forth in 28 U.S.C. § 1961 on the total sum awarded in the judgment, from the date judgment is entered to the date of payment; and

(6) attorney's fees and costs in the amount of **$6,656.56**, as detailed above.

\*     \*     \*     \*     \*

This Report and Recommendation will be filed electronically, and a copy will be sent by mail to Defendant. As a courtesy, the Court also respectfully directs Plaintiffs to provide a copy of this Report and Recommendation to Defendant forthwith and to file proof of same by December 29, 2025. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to

28

object timely to a . . . report [and recommendation] operates as a waiver of any further

judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated: Brooklyn, New York
      December 22, 2025

                            *Taryn A. Merkl*
                            TARYN A. MERKL
                            UNITED STATES MAGISTRATE JUDGE